# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01423-COA

**ALEXANDRIA MARIE GRISTE A/K/A**                 **APPELLANT**
**ALEXANDRIA GRISTE A/K/A ALEXANDRIA**
**WALKER GRISTE**

**v.**

**STATE OF MISSISSIPPI**                            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/22/2024 |
| TRIAL JUDGE: | HON. GRADY FRANKLIN TOLLISON III |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | STEVEN E. FARESE SR. |
| | JOSEPH WHITTEN COOPER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: INDIA SPRINKLE |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/04/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., EMFINGER AND LASSITTER ST. PÉ, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     On September 6, 2022, Alexandria Marie Griste was indicted by a Lafayette County grand jury for first-degree murder for the death of Corey Lyles. After a jury trial on October 15-18, 2024, Griste was found guilty of manslaughter and sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections. Griste appeals, arguing three points of error.

## FACTS AND PROCEDURAL HISTORY

¶2.     Griste and Lyles lived together in her home in Oxford with her two young daughters.

The couple had a history of domestic violence that had resulted in at least one call to law enforcement prior to the incident, which is the subject of this appeal. On June 7, 2022, the parties exchanged explicit text messages between 2:00 and 4:00 p.m. that show they were arguing, name-calling, and threatening one another, primarily regarding their sex life. Around 6:30 p.m., a video recording from inside the home shows Griste and Lyles in a heated argument. At one point Lyles tried to walk away, but Griste yelled at him not to leave. Obviously angry and frustrated, Lyles moved into the kitchen area and punched a wall several times. Griste followed him and convinced him to stay.

¶3. According to Griste's statement to law enforcement, around 7:15 p.m., she and Lyles went to her daughter's softball game. Griste told the investigators that while at the game, Lyles slapped her in the face. After they got home, Griste told investigators she was talking to her kids when Lyles called and asked if they wanted anything from McDonald's. She had not realized that he had left the house but asked him to bring some food home for her and the kids. Lyles and Griste exchanged telephone calls and messages from around 10:00 until 10:26 p.m., when Griste sent Lyles this audio message on Snapchat:

> Don't pull in my driveway talking like this. Just don't pull in my driveway at all. [Because] I swear [before] God, if you want to come around here acting like this s\*\*t with my f\*\*\*ing kids . . . I swear [before] God you ain't [going] to have no f\*\*\*ing kids, you ain't [going] to have no f\*\*\*ing life, you ain't [going] to have no f\*\*\*ing friends, you're going to be f\*\*\*ing … D-E-A-D mother f\*\*\*er.

Griste said when Lyles got back to her house, he was just sitting in his truck eating and staring at her. Because she felt threatened by this, Griste got her pistol out of her sock drawer and tucked it into her pants. Griste then stepped outside and asked Lyles if he had gotten

2

anything for the kids. According to Griste, Lyles said something "smart mouthed" and threw a McDonald's bag of food across the driveway. At that point, she told law enforcement that Lyles started coming at her. She attempted to fire a warning shot, but the safety was on the gun. Griste told the investigators that she said something like, "[Y]ou need to chill out, you're going to regret it, don't do it." At that point, Griste claimed, she fired a warning shot and maybe another, but she could not recall.[1] Griste testified that Lyles continued toward her, so she went back inside the house and shut the door. She stated that the door was damaged and was difficult to lock because Lyles had tried to break it down before. Griste told investigators that as Lyles came closer, she shot him through the window of the door. After she shot Lyles, he stepped back and fell to the ground. According to her statement, she ran to him immediately, called 911, and administered CPR.[2] Griste told the officers that at the time she shot him, Lyles was at the door trying to get in.

## ANALYSIS

¶4.  Griste raises three issues on appeal, which we address below.

### I.    Did the trial court err by failing to grant Griste's motion for a directed verdict?

¶5.  At the close of the State's case, Griste moved for a directed verdict, alleging that the State had not proved a prima facie case, had not met the burden of proof beyond a reasonable doubt, and that she was entitled to a directed verdict of acquittal based on *Weathersby v.*

---

[1] The record shows that there were four shell casings recovered at the scene; three outside and one inside.

[2] Telephone records show that Griste called 911 at 10:38 p.m. and again at 10:43 p.m.

3

*State*, 165 Miss. 207, 147 So. 481 (1933). The trial court denied Griste's motion. Thereafter, Griste called no witnesses, nor did she testify in her own defense.

¶6.     On appeal, Griste again argues that the trial court erred by not applying the *Weathersby* rule and granting her a judgment of acquittal. In *Thomas v. State*, 416 So. 3d 102, 110-11 (¶¶19-20) (Miss. Ct. App. 2025), we explained the *Weathersby* rule:

> Where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.

> *Childress v. State*, 395 So. 3d 1243, 1247 (¶27) (Miss. 2024) (quoting *Weathersby*, 147 So. at 482). "Where the *Weathersby* rule applies and the defendant's version affords an absolute legal defense, the defendant is entitled to a directed verdict of acquittal." *Johnson v. State*, 987 So. 2d 420, 424 (¶10) (Miss. 2008). The applicability of the *Weathersby* rule is a determination for the court, not the jury. *Id*. "[I]t is a rare case that meets all of the requirements of the *Weathersby* rule." *McQuarters v. State*, 45 So. 3d 643, 650 (¶21) (Miss. 2010) (quoting *Sartain v. State*, 311 So. 2d 343, 345 (Miss. 1975)). Where factual issues exist, the case must be submitted to the jury. *Id*.

¶7.     To be sure, Griste and Lyles were the only witnesses to the shooting. However, Griste cannot avail herself of the *Weathersby* rule because she failed to testify at trial or offer any other testimony. In *Garrett v. State*, 921 So. 2d 288, 291 (¶¶12-14) (Miss. 2006), concerning the availability of the *Weathersby* rule as a defense, the supreme court stated:

> [Garrett] presented no evidence and called no witnesses following her motion for directed verdict, that is to say, she rested without putting on any proof. Having put on no proof, she therefore presented no version of the homicide. Her "version" of the homicide in her January 28, 2002, handwritten statement, and the tape-recorded statement of February 7, 2002, were unsworn statements which were introduced into evidence by the State in its case-in-chief and may not be considered [Garrett's] version of the homicide for purposes of obtaining a *Weathersby* instruction.

In *Carter v. State*, 221 Miss. 111, 72 So. 2d 231, 232 (1954), this Court held that even though the State introduced statements made by Carter in its case, the *Weathersby* rule had no application because Carter neither testified nor offered any witnesses at trial. Similarly, [Garrett] may not invoke the *Weathersby* rule because she did not establish her version of the homicide through testimony at trial.

[Garrett] argues that her version of the facts came into evidence through the statements she made to police. However, this Court has never held that an unsworn statement to police may be used for purposes of a *Weathersby* analysis. Thus, [Garrett's] first assignment of error is without merit, and the trial court properly denied her motion for directed verdict.

¶8. Just as in *Garrett*, Griste's statements to law enforcement that were introduced into evidence during the State's case-in-chief were unsworn statements. Like Garrett, Griste did not testify at trial. As a result, we find that the trial court did not err by denying her motion for a directed verdict.

## II. Did the trial court err by granting the State's motion in limine to exclude evidence of other bad acts of the victim?

¶9. In *Quinn v. State*, 424 So. 3d 311, 319 (¶31) (Miss. Ct. App. 2025), we explained:

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Amos v. State*, 360 So. 3d 323, 330 (¶25) (Miss. Ct. App. 2023). Because "[a] trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence," this Court will not reverse the trial court's ruling "unless the judge abuses this discretion so as to be prejudicial to the accused." *Shaw v. State*, 915 So. 2d 442, 445 (¶8) (Miss. 2005).

¶10. On November 3, 2016, Lyles was convicted of enticement of a child. The State moved to exclude any evidence of that conviction. Also, because the conviction was mentioned in Griste's interview with investigators, trial counsel asked for that portion of the interview to be redacted.

¶11. In support of its motion, the State offered the following:

5

1) [That Griste] was indicted by the September 2022 Grand Jury for the crime of deliberate design murder for an event that occurred on June 7, 2022, for the shooting of Corey Lyles. The State expects the evidence to show the Defendant claims she acted in self-defense.

2) Corey Lyles was previously convicted of Enticement of a Child in LK17-163 for an offense that occurred on November 3, 2016.

3) The State will offer at a hearing on this matter that no force or threat of force was used in LK17-163.[3]

¶12. At the pre-trial motion hearing on October 14, 2024, the State argued that the conviction for enticement was "distant in time and unrelated to this case, more prejudicial than probative." Defense counsel argued that enticement of a child is classified as a violent crime pursuant to Mississippi Code Annotated section 97-3-2 (Rev. 2020) and therefore admissible under Mississippi Rule of Evidence 404 to show Griste's state of mind at the time of the shooting and the reasonableness of her use of force, citing *Jordan v. State*, 211 So. 3d 713, 717 (¶17) (Miss. Ct. App. 2016). Griste's main argument at the hearing was that because she claimed self-defense, evidence that she was aware of the prior conviction was relevant.[4]

¶13. Before making its ruling, the trial court questioned defense counsel regarding Griste's reliance on *Richardson v. State*, 147 So. 3d 838 (Miss. 2014). The circuit court noted that in *Richardson*, the victim had "bragged" to the defendant "about having been convicted for murder and armed robbery," his "previous experience as a gang member and killing a snitch

---

[3] While this statement was in the motion, we find no such evidence introduced during the hearing.

[4] While there was evidence Griste knew of the conviction, there is no evidence she knew of any violent act committed by Lyles in connection with the conviction, or even that his conviction was classified as a crime of violence.

6

in prison," and "that he had harmed those who upset him." The trial court questioned whether the evidence of the victim's history of violence in *Richardson* was really comparable to Lyle's prior conviction for "enticement of a child." Defense counsel could only state that enticement of a child was designated by statute as "a violent crime."

¶14. While the crime is designated as a crime of violence under section 97-3-2, there is no evidence that Lyles engaged in any violent act in the commission of the crime of enticement. The State argued that, without more, the evidence of a conviction for enticement of a child would be more prejudicial than probative and would be used merely as a "back doorway of getting into that character evidence."

¶15. In delivering his ruling, the trial court found that Lyle's prior conviction would be more prejudicial than probative and granted the State's motion to exclude evidence of the conviction and to redact any part of Griste's recorded interview referring to it.

¶16. The trial court filtered the evidence through Mississippi Rule of Evidence 403. Our supreme court explained in *Bowman v. State*, 283 So. 3d 154, 165 (¶39) (Miss. 2019):

> [B]efore a judge admits other-acts evidence, it must be filtered through Mississippi Rule of Evidence 403. Under Rule 403, when weighing admission of relevant evidence, a trial judge "*may* exclude relevant evidence if its probative value is substantially outweighed by [the] danger of . . . unfair prejudice . . . ." Miss. R. Evid. 403 (emphasis added). **These admissibility determinations are permissive and discretionary on the trial judge's part.**

(Footnote omitted) (emphasis added). The trial court obviously weighed the admission of Lyles' prior conviction and found the danger of unfair prejudice substantially outweighed the probative value. We find that the trial court did not abuse its discretion by excluding evidence of this prior conviction.

7

### III. Did the trial court err in allowing the State's requested Jury Instruction S-7 (given as Jury Instruction 11)?

¶17. Under this assignment of error, Griste argues that (1) she was not put on notice that the State intended to offer a lesser-included-offense instruction on manslaughter; (2) the evidence does not support the giving of an imperfect self-defense manslaughter instruction; and (3) her conviction of manslaughter is supported by insufficient evidence and is against the overwhelming weight of the evidence. We will address each of her claims below.

¶18. Griste complains she was given no notice of the State's intention to offer a lesser included offense of manslaughter. We disagree. Mississippi Code Annotated section 97-3-19(3) (Rev. 2020) specifically provides that "[a]n indictment for murder or capital murder shall **serve as notice** to the defendant that the indictment may include any and all lesser included offenses thereof, including, but not limited to, manslaughter." (Emphasis added). Further, Mississippi Code Annotated section 99-19-5(2) (Rev. 2020) provides:

> (2) For purposes of this section, manslaughter shall be considered a lesser included offense of murder and capital murder, and the jury may be properly instructed thereon, upon request by either party or upon the court's own motion, in any case in which the giving of such instruction would be justified by the proof, consistent with the wording of the applicable manslaughter statute.

Accordingly, the indictment itself provided notice that the State may request a lesser-included-offense instruction at trial. This claim is without merit.

¶19. Griste next argues that the evidence did not support the giving of an imperfect self-defense instruction that would allow the jury to find her guilty of manslaughter. However, as she has maintained from the start, the jury was given an instruction on self-defense:

8

JURY INSTRUCTION NO. 9

To make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either:

1.      actual, present, and urgent, or

2.      The defendant must have reasonable grounds to believe that the victim intended to kill her or do her some great bodily harm.

Additionally, the defendant must have reasonable grounds to believe that there is imminent danger of such act being accomplished.

It is for you to determine the reasonableness of the grounds upon which the defendant acts. If you unanimously find that the defendant acted in self defense, then it is your sworn duty to return a verdict in favor of the defendant.

This instruction was given based upon Griste's recorded statements to law enforcement that she was frightened by Lyles and was afraid if he entered the house, he would cause her or her girls great bodily harm. However, the jury was instructed that they must decide whether Griste's fear was reasonable and whether any danger posed by Lyles was imminent.

¶20.    Because Griste shot Lyles, who was unarmed, before he entered the house, and based upon the other facts outlined above, the State offered the following instruction on imperfect self-defense:

JURY INSTRUCTION NO. 11

If a defendant killed another person with an actual, genuine belief that the killing was necessary in order to protect herself from great bodily harm or death, even though that belief was not reasonable under the circumstances, then that defendant did not have the mental requirement to commit first-degree murder. However, the killing may be manslaughter.

If you find beyond a reasonable doubt from the evidence in this case that:

1. On or about June 7, 2022, in Lafayette County, Mississippi;

9

2. Corey Lyles was a human being; and

3. Alexandria Marie Griste killed Corey Lyles by shooting him;

4. acting with an actual, genuine belief that the killing was necessary in order to protect herself from great bodily injury or death; but

5. that belief was not reasonable under the circumstances;

then you may find Alexandria Marie Griste guilty of manslaughter.[5]

Given the contradictions between the statements Griste gave to law enforcement and the physical evidence from the crime scene,[6] a jury question was presented as to whether Griste acted reasonably and whether any threat that Lyles may have posed placed Griste or her children in imminent danger of great bodily harm. We find the trial court did not abuse its discretion by giving this instruction, which was supported by the evidence at trial.

¶21.     Griste argues that there was insufficient evidence for the verdict of manslaughter and that the verdict was against the weight of the evidence.  Concerning the legal sufficiency of the evidence, in *West v. State*, 378 So. 3d 422, 427 (¶13) (Miss. Ct. App. 2023), we explained:

> "In considering whether the evidence is legally sufficient to sustain a conviction, 'the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.'" *Carpenter v. State*, 311 So. 3d 1268, 1275 (¶26) (Miss. Ct. App. 2021)

---

[5] Griste does not challenge whether Instruction 11 was a correct statement of the law, but this Court has held an almost identical instruction to be proper in *Skinner v. State*, 385 So. 3d 406, 416 (¶38) & n.3 (Miss. Ct. App. 2023).

[6] This includes the video of the earlier altercation in the home in which the jury could well have concluded that Griste acted more aggressively toward Lyles than Lyles acted toward Griste.

(quoting *Thompson v. State*, 269 So. 3d 301, 308 (¶17) (Miss. Ct. App. 2018)). We apply de novo review. *Id*. "The relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Green v. State*, 269 So. 3d 75, 79 (¶12) (Miss. 2018) (quoting *Hearn v. State*, 3 So. 3d 722, 740 (¶54) (Miss. 2008)). We accept all evidence supporting a guilty verdict as true, "and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence." *Id*. (quoting *Galloway v. State*, 122 So. 3d 614, 665 (¶168) (Miss. 2013)).

While Griste contends that her "words to investigators were unequivocal that she fired in self-defense," her statements are but one piece of the evidence, and the jury must also judge her credibility. Further, in *Anderson v. State*, 79 So. 3d 501, 506 (¶18) (Miss. 2012) (citing *Hester v. State*, 841 So. 2d 158, 160 (Miss. Ct. App. 2002)), the supreme court stated that "[a]llegations of self-defense do not necessarily negate the applicability of the lesser-included-offense instruction of manslaughter."

¶22. Based upon the evidence outlined above and giving the State the benefit of all reasonable inferences to be drawn from the evidence, we find that a rational trier of fact could have found all the elements of manslaughter beyond a reasonable doubt. As a result, we find that legally sufficient evidence existed to support the conviction.

¶23. Griste also argues that the jury's verdict finding her guilty of manslaughter is against the overwhelming weight of the evidence. In *Simmons v. State*, 387 So. 3d 1036, 1043 (¶24) (Miss. Ct. App. 2024), we set forth our standard of review when the weight of the evidence is challenged:

> Challenges to the weight of the evidence are reviewed under an abuse of discretion standard. *Bowman v. State*, 360 So. 3d 977, 996 (¶69) (Miss. Ct. App. 2022). When reviewing a challenge to the weight of the evidence, "[o]ur role as [an] appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the

overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Eaton v. State*, 359 So. 3d 1081, 1086-87 (¶22) (Miss. 2023) (quoting *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017)).

¶24. When we view the evidence in the light most favorable to the verdict, we do not find that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

## CONCLUSION

¶25. Based upon the above analysis, we affirm Griste's conviction and sentence.

¶26. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**